## Frederick Aye, Albert Aye and R. S. Martin *v.* R. L. Brown, J. R. Smith, Wm. H. H. Piper and G. W. Reese, Appellants.

*Lease—Oil and gas lease—Contract—Question for jury.*

In an action to recover rentals under a gas lease it appeared that under the terms of the lease the lessees were to pay rental only in case gas in marketable quantities was produced. There was evidence of the amount of gas pressure of the well put down on the property, and conflicting evidence of experts as to whether such amount of pressure would produce gas in marketable quantities. *Held,* that the case was for the jury, and that a verdict and judgment for the lessors should not be disturbed.

Argued Oct. 12, 1896. Appeal, No. 13, Oct. T., 1896, by defendants, from judgment of C. P. Armstrong Co., Septem-

ber Term, 1893, No. 156, on verdict for plaintiffs.   Before STER-
RETT, C. J., GREEN, WILLIAMS, MCCOLLUM, MITCHELL, DEAN
and FELL, JJ.   Affirmed.

Assumpsit for rentals under an oil and gas lease.   Before
RAYBURN, P. J.

The material portions of the lease were as follows:

" We, Frederick Aye, Albert Aye, and R. S. Martin of Kittan-
ning, Pa., the lessees named in the hereinafter described oil and
gas leases, for the considerations hereinafter mentioned and
stipulated for, have granted, assigned and set over, and by these
presents do grant, assign and set over unto R. L. Brown of Kit-
tanning, Pa., and J. R. Smith, Wm. H. H. Piper and G. W.
Reese of Manor township, Armstrong county, Pa., the seven
eighths part of all the right, title, interest and claim of them,
the said Frederick Aye, Albert Aye, and R. S. Martin, of, in
and to the following oil and gas leases of the lands therein de-
scribed, situate in Manor and Kittanning townships, Armstrong
county, Pa., as follows, to wit: [Description of leases.]

"The said Frederick Aye, Albert Aye and R. S. Martin, re-
serving nevertheless hereby unto themselves, their heirs, execu-
tors, administrators and assigns, the one eighth part of all the
petroleum or oil in the lands described in said leases, and the
same is not herein granted and assigned.

"In consideration of the premises and the future operating of
said leases for the purposes therein expressed, the said R. L.
Brown, J. R. Smith, Wm. H. H. Piper and G. W. Reese, for
themselves, their heirs, executors, administrators and assigns,
do hereby jointly and severally covenant to and with the said
Frederick Aye, Albert Aye, and R. S. Martin, their heirs, exec-
utors, administrators, and assigns, that they, the said R. L.
Brown, J. R. Smith, Wm. H. H. Piper and G. W. Reese, will
drill the test well stipulated for in the said leases at their own
cost and expense, and without any expense, charge, cost or as-
sessment whatever to said Frederick Aye, Albert Aye, and
R. S. Martin, who shall have an eighth interest therein when
completed; and upon the completion of said test well, will pay
to said Frederick Aye, Albert Aye, and R. S. Martin the sum
of $1.00 per acre for each acre contained in said leases, provid-

ing said test well contains gas in sufficient quantity to pipe it to market.

· "It is understood that these presents do not constitute a copartnership or company between the assignors and assignees herein named."

At the trial R. A. Rodgers, called by plaintiffs, testified:

" Q. What is your business ?    A. Drilling gas and oil wells. Q. How long have you been in the business?  A. I have been in the gas business five years this fall.   Q. Where ?   A. In Armstrong and Butler counties.   Q. Drilled a number of wells ? A. Yes, sir, we have drilled quite a number.   Q. Been fortunate in getting gas?   A. Some we got gas and some—— Q. What experience have you had in marketing the gas? A. Never had any experience in marketing at all, we just drill the wells for other companies.   Q. Do you know the pressure contained in those wells you drill?   A. Some we do, and some I suppose we have forgotten.   Q. Those wells you drilled, were they piped to market?   A. Where they got gas that paid to-pipe it they piped, and where they did not they did not pipe it. Q. What was the pressure in those wells in Armstrong county of persons for whom you were drilling and piping it to market? " To be followed by evidence showing where the market was to which they were piped.

Defendants' counsel objected as incompetent and irrelevant; the witness has not shown himself sufficiently acquainted to give his opinion as an expert on the kind of pressure; it is not proposed to show that the wells of which the witness is about to speak were in the neighborhood of the well in dispute.

The Court: We think if the witness can give evidence here as to the kind of pressure that was on these wells, we will permit him to answer.   We will give you an exception and sealed bill.

· "Q. How are wells tested in Armstrong county?   A. It is taken by the minute.   Q. What piece of machinery?   A. They have got a gauge that they use for that purpose, common steam gauge, generally don't go over two hundred pounds, but they have got a gauge that will run up one thousand pounds to take the pressure of a well.   Q. What are these gauges ?   A. They look like an ordinary steam gauge, only they will gauge one thousand pounds, and some of them five hundred, and as low

as one hundred and sixty. Q. What is the lowest pressure that these gauges will take? A. Well, about five pounds, you have got to have five pounds to make it show at all. Q. How are they applied to the well in order to ascertain the pressure? A. There is a small hole tapped in the side of the casing and a thread tapped in it, and then a short nipple in it and put the gauge in that. [1]

" Q. Where have you drilled wells in Armstrong county? A. We drilled down here on this side of Freeport, and we drilled one out here in Armstrong about two miles and a half from here, it was a dry hole, though, and on this side of Freeport, several wells there. Q. Was the gas of many of these wells taken to market? A. Some were and some not. Q. What was the lowest pressure that you can recall now that was taken to market? A. I saw a well there that rated seventy-five pounds was taken to Ford City Glass Works. Q. How far is that? A. It is a good little piece off the works, but it was not a great ways off the main line. Q. What is the range of wells that are piped to market that you know of, of your own knowledge? A. They run anywhere from one hundred pounds up to five hundred pounds. Q. Do you mean one hundred pounds and five hundred pounds to the minute? A. To the minute. Q. A gas well situated four miles from a gas market that would show a gauge such as you have described, pressure of two hundred and forty pounds, state whether or not in your opinion such a well would contain sufficient quantity of gas to pipe to market? "

Defendants' counsel objected, because the witness has not shown sufficient knowledge of the marketing of gas to tell whether or not there was sufficient gas in this well to pipe to market; second, it is not shown that he has any acquaintance whatever with the well in dispute; third, it has not been shown that a proper gauge was used to gauge the well in dispute, and it has not been shown by any evidence nor has it been asked the witness what kind of pressure, whether rock pressure or minute pressure, is referred to.

The Court: We will overrule the objection and give an exception and sealed bill, and admit the evidence for the present.

" A. You mean two hundred and forty pounds in a minute; if she makes two hundred and forty pounds in a minute I would

consider it sufficient to pipe.   Q.  Well according to the manner in which wells are measured?   A.  Wells are all gauged by minute pressure, what they make in a minute ; rock pressure does not count because some wells will—if she made two hundred and forty pounds in a minute would consider it good enough to pipe four miles." [2]

The court charged in part as follows:

Now, this action is brought by the plaintiffs to recover what they allege is due them by the agreement entered into between them and the defendants in reference to this leased property. The plaintiffs contend that they by the terms of this agreement are entitled to one dollar per acre for the leases that they transferred to these defendants by the assignment.   They contend that the well drilled on the Colwell property by the defendants was such a well as was described in this assignment ; that is, it was a well containing sufficient gas to pipe to market.   R. S. Martin, one of the plaintiffs, testifies that after the well had been finished they had a meeting at Mr. Brown's office, one of the defendants, where Mr. Brown, Mr. Smith, Mr. Reese and Mr. Dull of Harrisburg, were present.   Mr. Aye, one of the plaintiffs, was also present.   He says they had some conversation there in reference to the development of this territory ; and it was proposed by Mr. Brown, one of the defendants, that they enter into a corporation, get a charter and develop this property ; that plaintiffs would not accede to it, but offered to sell to them the remaining one eighth which they still held and reserved in the agreement entered into between them and the defendants.   He also states that at that time there was nothing said by any of the defendants that the well thus drilled upon the property was not a good well ; there was nothing said that it did not contain a sufficient amount of gas to pipe to market. I believe he also stated that there was something said by him or Mr. Aye in reference to the payment to them ; they wanted the money which was due them under the agreement between them and the defendants.

Now, as to the capacity of this well, the plaintiffs call Mr. Miller and Mr. Mecklish ; they testify that they were present at the well on the Monday after it was struck ; Mr. Brown was there, and that Mr. White, one of the men who had drilled the

well, put a gauge upon this well, and that the gauge showed
some two hundred and thirty-five or two hundred and forty
pounds, I believe it was, that they testified to, and that Mr.
Brown stated there that it was a pretty good well, or a fair
well. [Mr. Rodgers is called in behalf of the plaintiffs and
testifies before you as to his experience in gas wells, and he tes-
tifies as to the pressure of a well that would warrant the piping
to market, but also states the conditions under which it could
be . piped, speaking about where the market was, and whether
there · was not a pipe line in the vicinity, it would not be so far
.to pipe, etc.] [6]

· · Now, the defendants do not dispute that this agreement was
entered into ; · they say they entered into the agreement ; they
·say they drilled the well ; but they say the well was not of suf-
ficient capacity to pipe to market.   Mr. Brown comes upon the
witness stand and testifies that he was out there the Monday
following, and there was a test made, that it was made with a
steam gauge, and I believe was made before the tubing was put
in ; it was when it was in the casing yet ; he states that it was
not sufficient to warrant the piping to market ; he states that
when any person asked him in reference to it he supposed he
would state to them it was a fair well, or a pretty fair well ; he
said he would not have any idea of depreciating his property.
Mr. Reese and Mr. Brown are called and testify as to their
experience in the gas business.   Mr. Reese testifies that the well
was not of sufficient capacity to pipe to market.   Mr. Piper also
·testifies to that fact.   And the evidence of Mr. Pitcairn is read
in your· hearing, who is also a practical gas man ; he gives in
his evidence what he considers a well that would pay to pipe
to market.   And in considering this evidence on the part of the
plaintiffs and on the part of the defendants, it will be for you
to take into consideration, in arriving at a conclusion whether
this well was of sufficient capacity to pipe to market, the situ-
ation of the well and the distance from the market.   It is under-
stood that a contract of this kind is to have a construction such
as would bring about that which is reasonable on the part of
either of these parties.   In the article of agreement it states
that they are to pay the sum of $1.00 per acre for each acre
contained in the said leases, provided said test well contains
sufficient gas to pipe to market.   If you find from the evidence

before you that this gas well contained sufficient gas, or gas in sufficient quantity, to pipe it to market, the defendants would have to pay to the plaintiffs $1.00 per acre for the number of acres contained in these leases, that is the number of acres which they got by the assignment. But if it did not contain gas in sufficient quantity to pipe to market, then these defendants are not liable. [That is about the whole thing in this case, and that you will ascertain from the evidence, whether or not it was situated as it was, the distance it was from the market, whether the well as drilled there put forth sufficient gas to warrant the piping of it to market by these defendants.] [7] Now you will recollect the testimony in this case as given by both the plaintiffs and the defendants, and it will be for you from that evidence to say whether or not there was sufficient gas in this well to warrant these defendants in piping it to market. That is about all the question you have to decide in this case.

Defendants' point and answer thereto were as follows :

That there is no sufficient evidence to submit to the jury that the well contained sufficient gas to pipe to market. *Answer :* There is evidence on part of the plaintiffs that it was sufficient. The defendants contend it was not. Now you take the evidence of the plaintiffs and the defendants and weigh the evidence, and from that evidence say whether or not there was a sufficient quantity of gas to pipe to market. This point as put we refuse. It is for you gentlemen to say ; it is not for the court to say whether there was sufficient gas to pipe to market or not. [5]

Verdict and judgment for plaintiffs for $1,285.65. Defendants appealed.

*Errors assigned* among others were (1, 2) rulings on the evidence, quoting the bills of exceptions ; (5–7) above instructions, quoting them.

*W. D. Patton* and *J. B. Neale,* with them *J. H. Painter,* for appellants, cited New York, etc., R. R. v. Enches, 127 Pa. 316.

*M. F. Leason,* for appellees.

PER CURIAM, November 9, 1896 :

This case depended on a question of fact which was properly

submitted to the jury and has been definitively settled by their verdict.    There was no error in the admission or rejection of evidence, nor in the court's instructions to the jury.    We find nothing in the record that requires discussion.

Judgment affirmed.